2016-2003 Hicks-Fields v. Harris County  Good morning, Your Honors. Judge Alrod, Judge Higginbotham, and Judge Higginson, and I represent the Hicks family here in this courtroom today on behalf of the appellants in the instant appeal. Your Honors permitting, I will focus on the following two reasons why this Court should reverse the decision of the Court below. First, the District Court erred when it refused to consider the Department of Justice report as evidence of Harris County's systemic failures that reflect its official, deliberate indifference to the rights and needs of inmates at Harris County Jail. When you say refused to consider, I thought the Court considered it but just said it wasn't, it didn't illuminate the situation because it wasn't during the right time period. The Court only considered the Department of Justice letter as evidence of notice but not as evidence of the unconstitutional policies that existed at the jail. Because it's not during the relevant time period. Wasn't that the basis? I'm not deciding that issue, I'm just at the question. You say that they didn't consider, the Court did, but the Court said it's not, this doesn't, we don't know if those policies were in effect or that sort of thing. Correct, Your Honor. The Court ultimately, the District Court determined here that the report may have been evidence of past policies but that it wasn't evidence of persistent policies and further concluded that there was no evidence of them in the interim. And I would take issue respectfully with that opinion in two respects. First, in order for a plaintiff to prove that a policy existed, courts have mandated that the plaintiff look to both past policies to determine the existence of a present policy. In fact, the United States Supreme Court has specified that, has mandated that the existence of a pattern is in fact demonstrated by prior incidents as opposed to contemporaneous or subsequent ones. And furthermore, Your Honor, we would contend that we did. What was the evidence that was not considered in your view? That there is weight here. There are a number of relevant findings at the Department of Justice reach that we would contend are relevant. And for the convenience of the Court, I provided this Court with three different charts that detail the specific. Why don't you just tell us what they are? Sure, Your Honor. Yes, Your Honor. There are three. First, there are findings with respect to the excessive use of force. Second, there are findings with respect to the unconstitutional handling of mentally ill inmates. You said there are findings. Are these incidents or something that, how do you get to policy? Yes, Your Honor. These are incidents. These are incidents that the Department of Justice looked to. And in evaluating these incidents, the Department of Justice concluded that, quote, certain conditions at the jail violate the constitutional rights of jail detainees. Specifically, the Department of Justice found, and I will quote, that the jail fails to provide detainees with adequate medical care, mental health care, and protection from serious harm. What about excessive force? Yes, Your Honor. There are a number of findings that the Department of Justice reached with respect to excessive force, and those would be indicated on the blue color-coded chart. An example or sampling of some of those findings would be, we have serious concerns about the use of force at the jail. Are these charts in evidence in the district court? Yes, they are, Your Honor. Yes, they are. The entire Department of Justice letter that was submitted to Harris County was provided as summary judgment evidence. No, that's not my question. In this format, is this some sort of, or is this something you created for argument today? And if so, when did you give it to opposing counsel? Yes, Your Honor. I gave it to opposing counsel this morning. It was not in this format, no, before the district court. However, each of the relevant findings were, in fact, before the district court. The district court did have access to the entirety of the Department of Justice. As I understand the thrust of your argument for reversible error from the principle in the reply brief, it is the treatment of this DOJ report. And I guess for me, this may take a minute, there's sort of four layers you need to address. First of all, and this could be quick, with the record site, did you object on the basis of your primary argument? Because as I remember it, the district court really doesn't address any of it. If both sides object to the use in the report and recommendations, the district court just says, I agree with the magistrate. Correct, Your Honor. Yes, we did object to the district court's conclusion. The district court did adopt the magistrate judge's findings. With no addressing to either side's particular objections to the use, right? The district court didn't go back through it and say — The district court's order stated it did consider our objections. It considered the objection. That's the extent of the district court's analysis. Yes, correct, Your Honor. So jumping to the report itself, I would think you, to prevail, you've got to be able to say, and I think this is what you were just arguing, that the Department of Justice report identified a pattern of unconstitutional behavior that corresponds to what happened to your client. Correct, Your Honor. And so you're saying that can be at a broad enough level as we're Department of Justice and we see excessive force happening here and mentally ill inmates aren't being treated well enough. That level of generality is analogous enough. That's — I know it's a little more particular, so I guess let me give you a question. What's the case that's most illuminating as to how specific the similarity has to be? The — I would point this Court to a number of different decisions. But the best one? The best one would probably be Shepard v. Dallas County. But Shepard is our authority, and I agree with you, it is powerful, and it is what the Seventh Circuit relied on. So that's an enormous precedent for us. But Shepard doesn't get to this, what I think of as the mismatch question. The pattern has to be the same. The Department can't just say they're unconstitutional activities, and then you would allege that's a sufficient pattern to put on notice. Correct, Your Honor. We don't have to — this Court doesn't have to reach that broad conclusion in the instant case. We do have a number of very specific findings. True, but there's nothing that says that mentally ill people had excessive force used against them, and there's nothing that says that inmates who had excessive force used against them weren't given medical care. Correct. And there's nothing about an attorney booth being an inappropriate place. So, again, it really does seem important that you've got a case that tells us how close the two have to be. Your Honor, I would also point this Court to the recent decision in Daniel v. Cook County. The Seventh Circuit, okay. If you don't mind, and I won't occupy all your time, that's my concern about mismatch. And then, of course, the holding here that we're reviewing is the magistrate saying whether there's a pattern that matches or not, it's stale. And the date of the report was 2009, which means that the incidents looked at were even before that. So, in a way, the magistrate was being generous, saying it's two years. Because, in fact, the incidents that would have to be your pattern for notice and pattern were three years or more before. So, presumably, Harris County took the report and maybe changed things. So, why would we be able to find that her staleness concern is clear error? How would we be able to say that? Your Honor, a couple of points of clarification, if I may. The Department of Justice letter was written in June of 2009. The evidence in the record does show that they reviewed incidents from 2007 up to the date that the report was written. Okay. And this incident's 2011. Correct, Your Honor. It is 2011. There is nothing in the record that would indicate that Harris County, in fact, implemented policies that would remediate the constitutional concerns that the Department of Justice had. And, Your Honor, because this is a summary judgment review, any inferences that are to be drawn should be drawn in the appellant's favor. So if this Court were to presume that any policies were enacted, it would have to presume that those policies didn't satisfy the constitutional deficiencies that the Department of Justice indicated. And that would be, as the Court noted in Reed v. State Farm, that those inferences must be drawn in the appellant's favor. Second, with respect to the lapse of time in the 18-month period, again, there's no evidence that those policies ever ceased to exist. And the fact that Mr. Hicks himself was subjected to this very incident would reflect that those policies were, in fact, still in place and were, in fact, being followed by officers at the Harris County Jail. And, Your Honors, if I may, Judge Higginson, if I may go back to your question about the fit. We have alleged the constitutional violation with respect to three different policies. First, the excessive use of force. Second, the unconstitutional handling of mentally ill inmates. And third, the rendition of medical care. We wouldn't require that all of those be considered together. Therefore, we wouldn't have to have an incident that reflect an excessive use of force against a mentally ill inmate who suffered a failure to train theory or not. Was that not the only? That was not the only ground, Your Honor. And this, the magistrate on page 40 of her memorandum and recommendation indicated that these three different policies and stated specifically, if I may pull it, stated specifically that the court finds the lie of pleading raised the allegation that Harris County policies caused these alleged constitutional violations. Those constitutional violations being, again, the excessive use of force, the unconstitutional Last quick question. Yes, Your Honor. I know we're bound by Shepard and Judge Jones wrote that decision convincingly, but it just from having taught evidence, it's still problematic for me to be able to think that the Department of Justice can come in, interview many, many inmates, and yet the entire report becomes admissible for the truth of the matter asserted. Why isn't there a hearsay within hearsay problem there? Well, as the court noted in Shepard and also as the court noted in Dixon, the 803.8c evidentiary requirements allows for this type of evidence to be admitted. Well, but this is a report that's built on inmate statements and the Civil Rights Department is aiming towards litigation. You have all the concerns that 803.8 would say don't admit it. Use it just for the purpose the magistrate said. Notice. But not for the truth of the matter. The Dixon court specifically. I know. That's the Dixon. Okay. So there's no court that's disagreed with our Shepard decision? No, there's not, Your Honor. Not that I'm aware of. Full use, even for the truth of the matter. Yes, Your Honor. And I would point out that we're not contending that this report is conclusive. In fact, if the honorable court were to remand, Harris County could certainly rebut the report. Harris County could present witnesses and evidence and make the arguments to the jury that the report is not conclusive of the policies. Well, the report might not even come into evidence, though. I mean, right? Correct, Your Honor. It may not. It would be an odd thing where it could be used on summary judgment, but not come into evidence at trial, or only portions come in. We don't know any of that. Well, correct, Your Honor. However, the Dixon court did determine only to consider it as evidence of notice, and the actual admissibility of the report is not before this court on appeal. Harris County did not cross-appeal that particular question. But did you raise in the first question that Judge Higginson asked, you said that it was objected to. Correct, Your Honor. Can you help me? Where is it specifically objected that the magistrate judge is wrong in concluding that it's not temporal? Our objections appear at the record 5163 through 5173. We specifically cited the exact holding that the district court reached when considering the pattern in practice. I mean, do you say the district court is wrong, it is temporal? We don't need a temporal link? I don't know that your objection is specific on this point. Maybe I'm not looking at the right thing. Can you help me? Yes, Your Honor. We don't cite specifically the temporal element. We do cite, however, the specific holding that we are challenging. And given this court's precedent, I believe in the Morin v. Moore case, the specificity of the objection that the... And that case would require the specificity of the objections, be that they state that there is an objection, point to the magistrate's language that the party is objecting to, and state the reasons why. So you give a reason why because we don't need to show a temporal link. Do you say that is the reason why? Not that specifically, Your Honor. However, we do object to that specific holding, and we do state that there are policy... the policies that were in place. Your opposing counsel objected, too, to the report and recommendations. They may not have cross-appealed, but they did. Yes. And so this is just a case where it cries for some treatment. Both parties are saying the use of this evidence that is dispositive wasn't properly assessed. Both parties are saying the district court does nothing, but just says, I adopt in full. That's correct? Correct, Your Honor. The district court did specifically state, though, that it considered the objections. And given this Court's precedent, this Court has held that where there's no evidence that the district court failed to conduct a de novo review, that the Court presumes that one was conducted. Therefore, we must presume that the district court conducted a de novo review, and where a de novo review... But are you saying the use by the magistrate was legal error in that 8038 and Shepherd control more, or are you saying it was an abusive discretion, clear error, finding staleness? We would contend that the district court erred in the evidentiary weight that it afforded to the Department of Justice error. The Department of Justice... The evidentiary weight, not... Okay. Not the admissibility, Your Honor. We would contend that the district court properly admitted that evidence, but that it did not give that the limitation of the evidence for notice purposes only was not appropriate, that it should have been considered as evidence of the policies that existed at Harrison.  And that's the Shepherd decision? Correct, Your Honor, it is. With respect to the objection question, again, we would have evidence in the record that the district court, we would believe that the district court conducted a de novo review, and where a district court conducts a de novo review, no objections are even necessary. When would a plaintiff not get past the summary judgment stage if Department of Justice reports based on institutions exist? What's the limiting principle? Well, the limiting principle is the Department of Justice hasn't issued such findings to every jail across the country. You have to have an unconstitutional deprivation to start with. Correct, Your Honor. And you would have to have a pattern, a fit, and staleness wouldn't have to, and that just hasn't been explored. Yes, correct. So every time one's issued, every inmate has a lawsuit for pattern and practice is what your position is? No, no, Your Honor, not at all. Of course the inmate would actually have to suffer a... If they suffer some incident, and obviously this was a very serious incident, so I'm not minimizing that in any way. But that would mean that every inmate who has an incident can then bring pattern and this DOJ report during some relevant time period. No, Your Honor, not at all. Again, had Harris County presented evidence or were there any evidence in the record that would show that these constitutional violations had been remedied or rectified, then certainly this court could reach a different conclusion. But the plain fact of the matter is no such evidence exists in the instant case. Could you articulate for me the policy that you say has been proved? Yes, Your Honor. I see that I'm out of time. May I answer your question? Yes. Yes, Your Honor. We specifically contend that Harris County had three unconstitutional policies. Those would be the use of excessive force... You're saying that you have proof that Harris County's policy is to use excessive force? That Harris County has condoned a pattern of practice of excessive use of force by its officers against inmates. That pattern of practice has promulgated and come together and constituted the official policy of Harris County. What's the second? The policy is to encourage excessive use of force. That is the official policy of Harris County. That's your argument. No, Your Honor. Well, first and foremost, an official policy doesn't have to be one that's actually... You're allowing custom. Correct, Your Honor. That's what I missed. Yes. It goes back... One of the things that troubles me is that I appreciate the difficulties of the disability issues here. I tend to agree with my colleague. But that said, I assume for the moment that this report comes in, when I ask you to articulate exactly the policy or the custom rather that's here, what you resort to is that the total jail's condition description. That this is a very crowded jail. They don't... They're inadequate facilities. And then you extrapolate from that specific policies such as excessive force. And I don't... That's the connection that ultimately this thing troubles me about your claim. You do a very good job of describing this, but that's a weakness in the record. Well, Your Honor... How many people were assaulted by police officers during the relevant time period that you say? There's not evidence in the record of that. How many police officers were... We're going to infer from a record in which we do not have evidence of how many assaults occurred that there's a policy of tolerating excessive force? Are you going to infer it because it's a very crowded jail, surprise, and that they have a lot of bad people there, surprise, that they fight, surprise? Uh, that you... That that's a policy? I'm not... I'm not trying to ridicule your argument. I'm trying to get to the heart of what I think is a weakness in this whole claim. Yes, Your Honor, and it's not necessary for this court to infer that a policy existed based just on these broad general principles. We have in this record specific evidence and specific examples of excessive use of force by officers and even the officer involved in this very case. By way of example, record on appeal 7108 through 7112, on October 31st of 2010, an eyewitness had reported that he watched Poole begin kicking and punching a 22-year-old African-American inmate in order to brutally beat him. Your answer, perhaps, to Judge Higginbotham, I mean, if you cleave to the report, I think your theory is the report in January of 2009 tells the sheriff in Harris County that, quote, your jail exposes detainees to harm or risk of harm from excessive use of force. So they've informed them, put them on notice, you have a... Now, here's the question, a pattern or is it just conditions? And I take it the report says here are four or five incidents, but they're built on many others. These are just illustrative. Exactly, Your Honor. And that... Okay, and that may reassure people or may not, because can the department just present that? And you're saying just at this point, yes, and Harris County can come in and rebut it. That's your view? Yes, Your Honor. And furthermore, well, the Department of Justice did cite to a number of specific incidents. Those are referenced in the record, record 72... Cited to them as illustrative of others? Cited to them as examples in and of themselves, specifically identified inmates by initial, specifically identified specific examples and instances of excessive use of force. They were about... What was the population of the jails during these relevant times? Range, population, range. Your Honor, I'm not certain offhand. I do know that it was substantial, Your Honor. There were a number of individuals and... Does it matter if we're talking about a jail that houses 50 or 40,000 people or 20,000 people as to how many fights or altercations they have? Certainly, Your Honor. If it's a policy, I would think that would be relevant. Yes, certainly, Your Honor. How many are there? I would have to look, Your Honor. I don't have that handy. Can you give me any estimate of it? No, Your Honor. I don't want to presume or speculate. Okay. I have a couple quick... Go ahead. Did you answer Judge Higginbotham's question? I just had one other, if I may, one other point, and that being that despite the number of incidents, we do have specific incidents that reflect a, frankly, a terrible pattern that has existed. There are excessive uses of force, the facts of which are very controversial and very troubling. This has to do with what is the customer practice. Usually, it's, well, you don't have two people, or they're allowed to use some procedure that's bad, or they don't have a right medical person supervising something. This is just bad. I'm trying to figure out. To me, it seems like it's bad things happen. Therefore, the custom is to have bad things happen. What is the specific thing that you say that Harris County did? What is their practice? It's kind of another way of asking Judge Higginbotham's question. I don't see in each of these areas what is the practice and what is the evidence to support that practice. Just saying you have people get beaten up, which is terrible. I'm not saying that's a good thing by any means by the question. It's not a practice. You don't have the right number of people there. They didn't have certain training about how to de-escalate. Yes, Your Honor. When you have incidents that repeat themselves over and over, and these incidents are so severe where you're talking about inmates actually dying as a result of uses of force, that's when it becomes a practice. When you take all of these pieces of evidence, all of these incidents coupled together. It's not just the Department of Justice report. It's the Department of Justice report plus the use of force incidents with respect to this particular officer. What is the practice that causes the excessive force? What is the practice that caused the poor medical attention or the other, the third one? That essentially officers are using excessive use of force and that it's not being appropriately reviewed or challenged. I would expect to see a failure to train a allegation that you're not really training these officers or you're hiring people without doing an adequate check. You're hiring a bunch of very aggressive guys that should never be in law enforcement or shouldn't even be engaged in it. I can understand those, but instead you're working backwards from the outcome of confrontations and we don't know the numbers. You've translated this into a statistical pattern and we don't have the numbers. That's kind of the sense I get from it. I want to take a much harder look at it. Yes, Your Honor. The numbers are actually in the record. I just don't have them handy before the court right now. I'll look when I sit back down. However, we did allege a failure to train policy. The district court did acknowledge such. It's not just failure to train, though. We are also contending that the existence of this pattern constituted a custom and therefore pattern of what? The pattern of excessive use of force against inmates where you have officers taking inmates into attorney holding booths, where they're beating them, where they're kicking them. We circle back to numbers. Yes, Your Honor. You got to have numbers to get a pattern. I mean, that's the way it is, obviously. Give me a sense of the time, relevant time period, how many incidents that you say are excessive force cases. We don't know how many are truly excessive force, how many confrontations. You're just relying on confrontations. The numbers would be in the record. However, just with this officer alone, we have evidence that he was involved in seven use of force incidents in just the 12-month period prior to attacking Mr. Hicks. So just him alone, we have seven uses of force in a one year. He was fired, right? Well, he was fired, Your Honor. He did appeal and he was reinstated. I don't know if he's there currently. However, he was reinstated. Well, he was fired is not just, well, yes. That suggests that that runs against you. And if the jail policy, if this was county policy, then they wouldn't have fired him. In other words, that's a rejection of their allegation. So how many, do we have anything in the record about that? Yes, Your Honor. We actually, the Department of Justice report, we would contend that perhaps Mr. Poole should have been fired after the first incident. I don't mean to hold you up anymore, but I have one. I have one last question. You're not arguing that the data that's in the Houston Chronicle is somehow appropriate for us to consider, are you? We, no, Your Honor. Will you just put that in for flavor in your brief? Because they actually have numbers in there, but that's not, that wasn't before the magistrate judge. It's not admissible evidence for many reasons. That's just, that was just flavor for the brief. Is that right? If I may answer that respectfully, Your Honor, we did contend and would ask this court to take judicial notice. However, this court doesn't need to do so. There is other evidence in the record that does. What case, those cases that you cited do not support taking judicial notice of the underlying facts in a newspaper article. They only support noting that there were newspaper articles. So what, none of the cases that you cite don't stand for that proposition. Do you have any authority that supports that proposition? No, Your Honor, I don't. And I would contend that the evidence in the record, aside from those, is sufficient for this court to determine that there was at least a question of fact with respect to the existence of the unconstitutional policies. Okay. And we've taken much more time with you. You still have saved your rebuttal, but in an effort to try to give both sides the same amount of time, but just guesstimating, the opposing counsel will have five more minutes if they choose to have five more minutes, just because we allowed you to go on and on, but mostly because we asked a lot of questions. Yes, certainly, Your Honor. Thank you. Thank you. May I proceed? May it please the court. My name is Lisa Halsey, and I'm with the Harris County Attorney's Office representing Harris County in this matter. Appellants erroneously seek to hold Harris County liable on a vicarious liability theory for three detention officers' acts and omissions in this case. Poole, Jamison, and Taylor, the officers who were involved in the Hicks incident, were all fired for violating well-established policies, procedures, and post orders that were put into place for the very purpose of protecting inmates from harm. Is that in the record? Yes, that is in the record. But it's also in the record that all but Taylor, the one who blew the whistle on the other two, gets reinstated. That seems sort of awkward. Well... In other words, the two, Poole, it's undisputed, Poole does a strike to the face. Right. The guy hits the concrete and dies on the floor, and the policy is you have to get medical attention after force. It's undisputed. Nobody got medical attention. So it's not disputed in this case. There was a... You just... That's not in this record? No, it is in this record. Okay. So at that point, Taylor, if I remember factually, is the one who says, in fact, Poole did hit. He hasn't told you he hit, but he did hit. And the end result seems to be Poole gets fired, never reinstated. No, Taylor, the one who said the truth about the hitting. But the other two are reinstated. But we're looking at acts from someone else. Oh, I know. I'm just saying when you say you think the record shows they're all fired, hence we can assume a policy existed that led to their firing. That's not really... I haven't gotten there yet. You haven't gotten there. Okay, go ahead. No, after the use of force incident, the case was referred to the DA's office for investigation and possible criminal prosecution of Poole. It was referred by the Harris County Sheriff's Office to the DA's office. After the DA's office concluded its investigation, the case was presented to the grand jury. The grand jury decided not to indict. They no-billed Poole. So the case came back from the DA's office to the Sheriff's office. The Sheriff's office did its administrative investigation of the Hicks incident. And after the case was investigated, the administrative disciplinary committee recommended that all three officers be fired. Then the head of the Detentions Bureau, Major Brown, Fred Brown, terminated all three of these officers' employment with the Sheriff's office on behalf of the Sheriff, then Sheriff Adrian Garcia. And they found that each of these three officers failed to post a round sheet and failed to conduct the rounds necessary to monitor inmate Hicks' condition. They also found that although the facts immediately preceding Poole's use of force were in dispute, it was undisputed that Poole used force against Mr. Hicks. They then found that each of these three officers failed to render aid to provide or obtain assistance in providing aid, medical attention, and professional care for Mr. Hicks immediately after the incident. They found that each of these officers failed to immediately report the incident to their supervisor, Sergeant Steven Wichkoski. And then they found that all of these failures were in violation of well-established Harris County Sheriff's offices. What's the case that says subsequent discipline for violating a policy that was on the books proves that the policy was actually ever enforced? The question in front of us is whether or not, as a result of the Sheriff being told in 2009 that you have a pattern of excessive force, you have a pattern of mentally ill people being maltreated, whether or not they were on notice that that was occurring. I mean, I guess I agree with their — I'm not — this isn't critical because you objected as firmly as they did to the magistrate's use of this DOJ report, and it's become sort of the sword that cuts the Gordian knot, right? I hope to get there. Yes. Okay. Okay. The case I think that you're looking for may be Jackson v. Ford, and that's out of the Fifth Circuit. It is an unpublished case. But in that case, the — not the officer, it was a nurse who was — who was fired in that case. And in that case, this Court said then the policies could not be the moving force underlying the constitutional violation. So there's one case. I'm sure that there are others. Do we have to look at reinstatement, though? Well, in this case, what happened — the case — the officers were fired. Then they went through an internal appeal through the sheriff's office. And on appeal to the sheriff, the sheriff has some designees listen to the — the officers' request for reinstatement. And in this case, the sheriff's office affirmed their termination. So then, pursuant to civil service rules, and this is all — the Civil Service Commission has created under — Well, just go to the basic question of how could there not be a question of fact as to Monell liability, given our Court's Shepard decision, and given the fact that there's a DOJ report here saying you've got patterns right before an unconstitutional deprivation occurs? How could that not always raise just a question of fact? Well, if Shepard held that in each one of these cases there's a fact issue, then — then we'd be going to trial in all of these cases. Can I help you? Could I get some numbers back before us? They — as I read this thing, they — in the relevant time period there, Harris County Jail had about 67,000 inmates. At the time of the DOJ investigation, they had over 9,400. Two thousand of them were receiving some form of psychotropic medication, which means they're — obviously, you don't prescribe psychotropic meds unless somebody is seriously ill. They — what we have are seven examples of inmates properly using force out of the general population, and that's seven out of 67,000 inmates. In Peterson, we held that the district court was not in error in determining that 27 complaints of excessive force over a four-year period were insufficient to establish a pattern. Now, I don't suggest this is controlling in any way, but I'm trying to get perspective over this of how we get to put before us the context of what we're dealing with. We're talking about one of the largest population centers in the country and one of the largest — a facility that's right behind Los Angeles, I guess, County. Harris County detains a lot of people. I don't make any judgments about that. That's a reality. And so, you've got this jail with something north of 60,000 people in it, and we're only pointing to like seven instances of excessive force. And at some point, the data has got to be put before us in terms of talking about whether there's a county policy here. Did you test the data behind the DOJ report? Yes, we did. In front of the magistrate? Well, we filed our objections to the admission of Exhibit PP, the report, before the judge, and we provided those objections, which looked at the number of incidents that the DOJ cited in its Section 1997B report and compared that to the number of prisoners held during that— Well, there was no holding on that. Right. No. So, we just don't know. When the Department of Justice report says, here are seven instances of excessive force, and we've just given you those as examples of many more that we found, you said, well, wait a minute, that can't be true. We want to challenge that. It could be here, say, with all the appropriate objections, not trustworthy. But there's no finding. Well, there is—there's no specific finding on that. Right. Right. So, Shepherd was Dallas County. Now, I'm assuming that's a huge jail, right? Well, Shepherd— And Judge Jones said, well, that's a fact question for the jury. If Dallas County didn't administer pills, whether or not there's a pattern and practice that you can impute to the jail is a fact question for the jury. That's what Shepherd holds. In the Shepherd case, that was a conditions case. This is an episodic acts or omissions case. There's another case— Well, there's a difference in the administrative policy of medications, and the excessive force is—we count the numbers. Every confrontation between an inmate and a guard shouldn't be counted. It's got to be—it's got to—somebody's got to categorize those as whether excessive force. We'd see a lot of excessive force cases, and they—you have to trial most of those underlying cases. Has any of these cases gone to trial, excessive force, out of Harris County? No. No. No? By which cases? You're talking about— Any claims against Harris County or guards down there for excessive force, how many of those? I assume you'd have a large number of civil cases. Well, we do have a large number of civil cases, and there are times when the courts find that there's a fact issue as to the individual officer's potential liability, but there aren't cases— But does the record chronicle any— —putting Harris County to trial? Well, does the record chronicle any of this in terms of a data set, to what—how many confrontations they've really—they've had, how many lawsuits they've had, if you've been found—whatever? I guess that my—what I'm trying to get at is extrapolating. Even though you—the Department of Justice comes in and says, you've got a problem down there, that jail, you've got too much excessive force, and you only got seven cases, and there must be many more, but I'm not sure how you get past summary judgment on seven cases out of a— Not out of sixty— But am I correct that the description of seven cases comes with the clear statement that these are examples of many others the Department found? I'm not saying I'm comfortable with Shepard or that document, but with it in the record, and you did object to it, and they objected to the limited use of it, there are a lot of unanswered questions. Well, let me first go back to Shepard. Shepard, as I said, was a conditions case. This is an episodic acts or omissions case, and there is Fifth Circuit precedent standing—well, an unpublished case, I think it's Anderson v. Dallas County, in which this Court holds that this report doesn't come in in an episodic acts or omissions  Going back to Shepard— Well, does—with the Seventh Circuit, the 28J Daniels case, do you think that correctly applies, Shepard, or not? The Daniels case? Again, in Daniels, it's a conditions case. It's a systemic deficiencies case rather than an isolated acts or omissions case. In that case, they, of course, compared to Hicks, which is episodic acts and omissions. Unlike Hicks, there's no evidentiary gap between the timing of the report and the timing of the incident. I wanted you to come back to that. Yeah. My question is to opposing counsel, if we'd had any adversarial testing of this report as to even it being admissible under 8038, we might have the data set questions. We could explore the staleness issue, which is what the magistrate hung her hat on, and then my question about pattern and fit as to whether or not the patterns identified correspond to what happened here. I'm guessing you'd say, no, they don't. No, they don't. But they did relate to maltreatment of mentally ill, and they did relate to excessive force not being reported. So what's the best case that gives me insight into how clear the two patterns, how clear the pattern DOJ says exists has to be the one? What's the best case that talks about that? The best case I have off the top of the hat is the Kitchen case. Kitchen, right. I'd go to that case. Where there isn't, okay. That's the best you know. And going back to Daniel's, just to note, that was a case involving a 2008, 98-page DOJ report, but the plaintiffs bridged the gap in that case because they also included a 2010 agreed order issued in the litigation, an actual case, and a 2010 monitors report, the Shansky report, and we don't have any of that here.  You didn't agree with any, and you did. And we've objected. They objected, and nothing happened below. Right. Okay. Well, let me go back to the beginning and say that the appellants in this case, and this is in answer to Judge Elrod's questions, failed to preserve in the trial court the arguments that they now raise on appeal with regard to the June 4, 2009, Section 1997 notice letter. They were required to file specific objections to Judge Johnson's proposed findings of fact and conclusions of law in order to preserve for de novo review any challenge to those proposed findings and conclusions under 28 U.S.C. Section 636B. In Nettles v. Wainwright, this Court, sitting en banc, found that specific objections are required. Frivolous, conclusory, or general objections need not be considered. Judge Elrod, you kept asking, what specific objections did you make? They made no specific objections. And you asked them, where can we find that in the record? In the record at pages 5169 through 5170, that's the only place you're going to see any reference by the plaintiffs to the DOJ notice letter. And what they say is this. Two years prior to the incident involving Mr. Hicks, the Department of Justice Civil Affairs filed their report summarizing their investigative findings of conditions of the Harris County Jail. In addition to their findings of inadequate chronic care, inadequate medical documentation and quality assurance, and inadequate access to mental health treatment, the DOJ had serious concerns about the use of force in the jail. Specifically, the DOJ found that neither the jail's policy nor training provided its employees with a concrete and clear understanding of prohibited use of force practices. Then one more sentence, the fourth sentence, which constitutes their entire references to the DOJ letter and their objections to the magistrate's M&R. They say, and they misquote the magistrate, the magistrate states that there is no evidence that these patterns continued into January 2011. Actually, the magistrate judge says so. Even if the letter proved a prior pattern of unconstitutional conduct, there is no evidence that these patterns continued into January 2011. That is it. That's all they included in their objections to the M&R. They did not specifically object to the judge's findings at all. The judge's findings aren't easy. At 38 and 59, the two times she brings it up, it's really not clear to me what I think the essence is. She just says it's too stale for either notice or pattern. I believe that that's the essence, but we have to look at those findings and make our objections, right? And they didn't do that. Okay, but why, just focusing on that staleness, what's your best case for too long again to be a relevant pattern? Do you have one? I'm not sure I have one. I can supplement that. No, no, that's okay. I'd be happy to. We didn't think, that's an interesting question. Second of all, you aren't contending that Poole's history, which goes back more than a year and a half, can't be considered because of too long back. So why would this report be too old? If we're looking at, if we're acknowledging, I'm not saying Poole's incidents are necessarily analogous, but why the difference DOJ versus Poole? Well, they failed to bridge the gap. That's what the judge said, and she was correct. They failed to bridge the gap. Yeah. You've got a report issued two years earlier. It's hard for plaintiffs to induce a pattern. Monel, liability is high, but here we have, no one's disputing the unconstitutional deprivation. And yet the plaintiffs, who have none of the access that the Department of Justice have, it's not often DOJ goes in like this, comes up with a full report, that concludes pattern. I can see why Judge Jones wrote in Shepard, and the Seventh Circuit has been saying pretty loud and clear, that's enough to get by summary judgment, unless the report is vulnerable under 8038. And you say it is, but it hasn't been explored. Well, may I go on? Yeah. Okay. So, that's all they said. They didn't object to the report. They didn't object to the MNR. They went on then, on appeal, and in their appellate brief, they raised more than 29 pages of arguments relating to this DOJ section 1997B notice letter. And again, four sentences dedicated to that in their objections. So, the district court wouldn't know that it needed to decide in the first instance whether it's too stale. That's exactly right. None of the arguments that they have raised on appeal were raised before Judge Lake. And in Anderson v. Dallas County, and a host of other cases, this court held if an opportunity is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal. They failed to preserve error. Judge Lake had no . . . Did they have a reconsideration with the district court or something? No. A reconsideration or . . . No. They didn't. I thought you objected to the report, too. Well, we did. And now you're saying they didn't, but you did? No. We lodged specific objections. Both of you lodged specific objections to the treatment of the report, I thought, by the magistrate. Well . . . Or are you saying you were specific and they weren't? Yeah. We were specific. We pointed out where we disagreed with the judges' M&R. They didn't. All they did was planted three or four sentences regarding the report in their objections. They didn't apply. They didn't make any arguments with regard to the report, and that was insufficient. That gave Judge Lake no information from which to really conduct a de novo review of the magistrate's findings with regard to the admissibility of the DOJ report. Did the county submit evidence that the pattern in practice changed between the time of the DOJ? I know you say it's on them to submit that it's not changed so that it's not stale. But did the county have evidence that it was changed in the record? Well, yes, in that our objections included substantial changes that had been made to the operations of the Harris County Jail facilities, and the notice letter, the 1997B notice letter, also recognized some of the changes that had been made. There's no evidence. You would win then, right? Well, it's plaintiff's burden to prove . . . You would win if . . . Yeah. Okay. Let me follow up on that. That's close to the question I wanted to ask is about what in this record reflects the response of the city to the report of the Department of Justice? Yes. What's the evidence of how they . . . what did they do, and how did they respond to it? Well, unlike Dallas County and unlike these other jurisdictions, Harris County did not enter into any sort of agreement with the Department of Justice. Instead, Harris County filed extensive 198 pages of objections to the DOJ's section 1997 notice letter and went through every single scenario described, and there were a total of 22 incidents that covered five separate issues. Harris County responded to those. Harris County also objected to the methodology followed by the DOJ in putting together this section 1997B notice letter. And, for example, and there are lots of examples through our 188 page objections, but we objected saying that the DOJ advocate's letter was untrustworthy since they failed to apply constitutional standards. Under section . . . Your reply to it was to challenge the report, but is there any evidence that, despite those challenges to one side, that changes were made, perhaps the city doesn't characterize these as responsive to the DOJ report, but what changes, if any, were made in a relevant way to the conditions at the jail after that report was filed and until this incident occurred? Well, that's a pretty general question. Again, this isn't a conditions case. It's an episodic acts and omissions case. But let me just give you an example. Some changes that are included in the record relating to use of force. We cataloged how the Office of Inspector General started a process, worked on a process, whereby each of these uses of forces would be analyzed closely. When a use of force is completed, when the incident's over, the officers involved have to complete extensive reports obtained, and their sergeant has to obtain witness statements and the like. All this information goes to the Office of Inspector General. The office reviews each use of force and determines whether further development or investigation is needed, and the DOJ has been very complimentary of that process. That's just one of many changes. The sheriff's office, when the DOJ came in, listened to the recommendations made by the DOJ. They came in during the summer of 2008. They reviewed documents from 2006 to 2000. The sequence of those that you just described, that particular change, was that before or after the incident here we're talking about? Before. Before this incident. Yeah. Anyway, DOJ reviewed documents from 2006 to 2008. During the course of their two tours, they'd made recommendations, and Harris County, to the extent possible, implemented the recommendations made while they were there and then after they left. After they left, Harris County submitted two reports, updates, if you will, explaining other changes that had been made prior to the issuance of the June notice letter, June 2009 notice letter. Stale, and even if not stale, corrected against? Yes. Yes. Furthermore, patterns identified don't match. Plus, untrustworthy. Right. Lots of stuff you wanted to object to. Yes, and we did. We objected to the fact, for example, that they came in under CRIPA, under Section 1997 AA of CRIPA, the Civil Rights of Institutionalized Persons Act, the Department of Justice has authority to assess jails and other detention facilities' compliance with constitutional standards. And when they opened their investigation on March 7th of 2008, they expressly informed the Harris County judge in a letter that they would be assessing the constitutionality of conditions of confinement in the jail. But when they reported the results of their investigation, they failed, the lawyers failed to follow constitutional standards. Instead, they based their quote-unquote findings and proposed remedial orders on undefined community-based standards, including, for example, generally accepted correctional standards, generally accepted correctional medical and mental health standards, generally accepted professional standards of correctional practice. Then they applied these ambiguous, undefined standards throughout their notice letter, their Section 1997B notice letter, and they recommended minimum remedial measures based on those ambiguous standards. Harris County objected to that methodology because the advocates, the DOJ advocates, had no authority under CRIPA to require local jurisdictions to comply with community practice standards or best practice standards. So what they did is they went outside the authority, the limited authority granted to them under CRIPA. And, for example, Section 1997I of the Act specifically provides that provisions of this legislation of regulations defining standards of care. Harris County objected to the quote-unquote findings and proposed remedial orders because the DOJ advocates' letter did exactly what they weren't supposed to do, applied. I think you've got to wrap it up now. But I have so much more. Harris County asked this court to affirm the judgment of the district court. Plaintiffs raised no genuine issue as to a material fact in this lawsuit. Thank you. I was even going to quote you on the pattern. Can I quote him? I think that's okay. Okay. Thank you. Your Honors, three points on rebuttal. First, Judge Hagenbotham, with respect to your particular concern about seven incidents, I would present to this Court that this case is not just about seven incidents. In fact, the Department of Justice, in its letter, noted that it reviewed That's really the point I was making. It's not about seven incidents. But that's what you relied upon. No, Your Honor. You have other arguments. But we're only talking about seven incidents. And there's some vague number out there that we don't know about. Seven incidents with respect to Officer Poole directly. However, we also rely upon the Department of Justice report. And the Department of Justice report indicates that while we use, and I'm quoting here, while we use individual incidents throughout this letter, we use them to illustrate systemic deficiencies. The Department of Justice considered far more than seven incidents. It considered thousands of pages over a large period of time to determine that there were systemic problems within Harris County Jail. Was it considering constitutional deficiencies or community standards deficiencies? It was considering, Your Honor, constitutional deficiencies. The Department of Justice is charged by the Attorney General of the United States Did you hear opposing counsel that said they actually reviewed for community standards, not for constitutional? Yes, Your Honor. However, that's not the function of the Department of Justice with respect to the 1997B letter. The Department of Justice is charged with ensuring that the constitutional rights of jail detainees are upheld. And with respect to counsel's argument, she specifically indicated when asked what measures has Harris County taken, she only cited the objections that Harris County proposed. The other evidence she cited, the cataloging, there's no indication in the record of when that policy was in effect or that that policy was taken in direct response. But the concern you're hearing, I think, from me at least, to both sides, is the Department of Justice report can't always work to create it. And yet here, so many of our questions about data set, about constitutional, about number, about fit, haven't been explored. They say you waived your objection. They did object, but there was no treatment of any of this. So if Shepard's going to have any limit, why wouldn't the appropriate remedy be a remand so that they can offer that it wasn't just their objection. It was, in fact, what they say. They corrected their policies. And when it comes along to Hicks, they had a policy that they then disciplined for. Certainly, Your Honor, this court could remand and have the district court decide that question. We would contend, though, that our objections were, and our arguments were sufficiently preserved. Judge Higginbotham, as Your Honor noted in U.S. v. Garcia-Perez, an argument is preserved when it gives the district court the opportunity to address the gravamen of the argument on appeal. We know that the district court did so because, in fact, the district court reached a conclusion with respect to the past... What about the argument that, well, they were disciplined, so the policy must exist? Your Honor, that would not indicate that the policy, the unconstitutional policy, was still in effect. As the United States Supreme Court noted in Board of County Commissioners of Byron County v. Brown, the municipal policy may be proper where it can be shown that the policymakers were aware of and acquiesced in a pattern of constitutional violations. And that's precisely what we have in the instant case. What about their claim that the cases that we're citing are conditions cases, not episodic act cases? Your Honor, the Anderson courts did not directly hold that the Department of Justice report cannot be considered an episodic act or omission case. That simply indicted there's no direct holding in that case. Furthermore, there's no evidence in the record here that the district court reached a conclusion as to whether this was an episodic act or omission case or conditions of confinement case. Yet we would contend that that's a distinction without a difference in any event because we are challenging the policies in place, those unconstitutional policies in place, with respect... Let me ask you one other question, for me, anyway. They, um... This case goes off on summary judgment. I'm not a great fan of summary judgments. I... I... Kind of an old-fashioned, I think, trial to solve more problems than paper, but... But it does strike me as a bit unusual in this type of litigation to decide it on summary judgment. But if this case goes to trial, it's also not clear to me exactly what's going to be developed that we haven't... It's not already been argued here. Your Honor, we would contend that there would be a number of issues developed at trial that haven't been developed here. The plaintiffs ultimately would have an opportunity to prove their case before a jury, before members of their peers, and they should be entitled to do so. But you have to demonstrate in response under Rule 56, you have to demonstrate in response to that that you have tribal issues that are there. And all we hear, and I'm hearing, is, well, the Department of Justice said that there were many other instances that were sort of a suggestion that we would prove more. Um... But the time to demonstrate that there's a tribal issue is in response to that summary judgment. I haven't looked at this record, so my questions are just kind of free-form. I apologize. But when I look at that record, what am I going to find? You're going to find a number of incidents specifically, not just those in the Department of Justice report, but also those that plaintiffs did present to the district court that reflect that officers did commit abuses  specifically that they did engage... How do I determine your characterization of it as an abuse? We see... Whether they're an abuse in a particular case is very fact-specific. And I have no patience with excessive force. None of the members of this court do either by law enforcement. And at the same time, we recognize that law enforcement has to act. And when you're dealing with inmates, many of whom are violent and are mentally ill, it's a difficult situation. They're trained to not use excessive force in that condition. But the question of whether that's truly excessive... It depends. It depends. An officer... You can describe the officer slug somebody in the face, and that's excessive force. Maybe, maybe not, depending on the circumstances. So that's my trouble. Then we start generalizing this stuff, and at some point, we're going to have to get down to what's there. And certainly, Your Honor, and that's the very reason why this case should go to a jury, because, as Your Honor noted, it is a fact question. Each of these incidents are fact-specific and fact-based. And if the jury could hear evidence of... The jury's going to find that there was a pattern of practice, but then the question is going to be the sufficiency of that finding, and what is that evidence going to be? That's the problem. You can't get there without numbers, ultimately. You might get... You can't try this case and prove it without numbers. Yes, Your Honor, and with respect to the numbers, the Department of... I'm not hearing numbers. You've got a population of this size. Your Honor, the Department of Justice considered the population of 9,400 inmates and found still that there was a systemic policy. Well, that's a sad comment on our society that we have so many people locked up, for sure, but that's what we have, and the county's trying to run that jail, and that's a huge population of people. Yes, certainly, Your Honor, it is, and we do recognize Harris County's need to protect those individuals. However, Harris County has a duty to protect those individuals within the confines of the Constitution, and even inmates have rights, Your Honor. We know that. Yes, Your Honor. Thank you, Counsel. Thank you. Thank you for your argument. The court will take a brief...